This is the second time this case has been on appeal. The facts were previously set out by the Supreme Court of Alabama in Watts v. Rudulph Real Estate, Inc., 675 So.2d 411 (Ala. 1996), in which that court reversed the trial court's judgment on the issue of whether the Wattses had complied with the redemption statute. The court held that the Wattses had exercised due diligence in attempting to comply with the redemption statute and that they were therefore excused from exact compliance with the 10-day limit on surrendering possession of the property. 675 So.2d at 414.
On remand after the reversal, the trial court conducted a hearing to determine the amount of money the Wattses must tender in order to redeem their property. On March 20, 1998, the trial court entered an order finding that the Wattses had attempted to redeem the property on August 20, 1993. The trial court also found the redemption price of the property to be $24,551.88, and that the Wattses had 60 days to tender that amount. Rudulph Real Estate, Inc. was to convey its interest in the property by warranty deed after the redemption price was tendered. The trial court ordered that "costs of this action are taxed as paid." On April 18, 1998, the Wattses appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975. On May 1, 1998, Rudulph cross appealed.
Also on May 1, 1998, the Wattses filed in the trial court a motion entitled "Motion for Enforcement of Final Judgment." The trial court denied the Wattses' motion, noting that both parties had appealed, and ordering that the judgment be stayed until the appeal was resolved.
In its original judgment, which was later reversed on appeal, the trial court found that Rudulph was entitled to receive the fair rental value of the property from the Wattses for the time that they remained in the house. The Wattses did not file a supersedeas bond while the first appeal was pending. At some point following the judgment, the clerk of the court disbursed to Rudulph $7,700 of the redemption price that the Wattses had paid into the court; that amount represented the rental value awarded by the judgment from the date of foreclosure until the Wattses vacated the property in October 1994. The clerk later released the remaining $16,867.94 to the Wattses.
During the pendency of the first appeal, Rudulph was required to make extensive repairs to the property before it could rent the property to tenants. The property remained vacant while those repairs were made. Sometime in 1995, Rudulph began renting the property to tenants. By the time of trial, Rudulph had collected approximately $20,000 in rent for the property.
In its order after remand, the trial court noted that the Wattses did not vacate the property until October 1994. The trial court found:
 "When the [Wattses] did vacate the property, they left it in such bad condition that the Court finds it could not have been rented without substantial repairs. In other words, the Court finds that the fair rental value to the property on the date [Rudulph] took possession was zero. Although the [Wattses] might reasonably have been expected to take some items with them, and some expense might be expected to put the house in order for a new tenant, such as *Page 1087 
painting the interior and perhaps even the exterior of the house, the evidence shows, and the Court finds, that when the Wattses left they took items such as the condenser for the central air conditioning unit, the built in stove, and the water heater. The [Wattses] further took most lighting fixtures and generally stripped the house. The Court therefore finds that the house had no fair rental value in the condition in which the [Wattses] left it and that they are therefore due no rental from it."
In its order, the trial court did not address whether Rudulph was entitled to recover the value of its permanent improvements to the property.
On appeal, the Wattses argue that they are entitled to all of the rent collected by Rudulph and that Rudulph is not entitled to the value of the permanent improvements it made to the property. On its cross appeal, Rudulph argues that it is entitled to the value of those permanent improvements.
The Wattses claim that the trial court erred in refusing to award them the rents from the property "accruing subsequent to the redemption date, which is August 20, 1993." Section 6-5-253(c), Ala. Code 1975, provides in part: "The purchaser shall be entitled to all rents paid or accrued including oil and gas or mineral agreement rentals to the date of the redemption, and the rents must be prorated to such date." In advancing this argument, the Wattses completely disregard the trial court's factual findings regarding the condition of the house when they vacated it. The evidence in the record supports the trial court's finding that the house had no rental value after the Wattses vacated it. Nonetheless, according to the statute, the Wattses are entitled to rents collected after their valid attempt to redeem the property. See Hicklin v. Old Ship African Methodist Episcopal Zion Church, 574 So.2d 822
(Ala.Civ.App. 1990).
Although finding in favor of the Wattses on the issue of rents, we cannot ignore the trial court's finding that the Wattses "stripped" the house when they vacated it and left it in a condition in which it had no rental value. Rudulph collected rents on the property only because it had expended a great deal of money in repairing the damage. We agree with Rudulph that it is entitled to an award for the proper lawful charges pursuant to § 6-5-253, Ala. Code 1975, including property taxes and the value of those permanent improvements it made to the property after the Wattses vacated it in October 1994. "Generally, a permanent improvement is anything that enhances the value of the property." Pankey v. Daugette, 671 So.2d 684, 689 (Ala.Civ.App. 1995). The Wattses argue that Rudulph is not entitled to be reimbursed for the value of the improvements it made to the property. The Wattses cite Parmer v. Parmer, 74 Ala. 285 (1883); Davis v. Anderson,678 So.2d 140 (Ala.Civ.App. 1995); and Pankey v. Daugette, 671 So.2d 684, in support of their argument. However, none of those cases is applicable to the facts of this case.
Davis v. Anderson and Pankey v. Daugette involved disputes over the value of the permanent improvements. Rudulph presented evidence regarding the condition of the house when the Wattses vacated it. The trial court found the house had no rental value at that time. Rudulph also presented evidence regarding the costs of the improvements it made and the value of the property after those improvements. The Wattses presented nothing to rebut that evidence regarding the value of the improvements.
In Parmer v. Parmer, the court held that the purchaser was not entitled to recover for the value of the permanent improvements to the property made after the valid offer to redeem the property. However, in Parmer the purchaser made the disputed improvements before the trial court had ruled on the merits of the redemptioner's claim. In this case, Rudulph *Page 1088 
made the permanent improvements after the trial court had ruled that the Wattses were not entitled to redeem the property.
Although the trial court's judgment was later reversed, the trial court's decision was valid until it was reversed.
 "A supersedeas bond posted on appeal stays execution of the judgment. The purpose of requiring a supersedeas bond is to preserve the status quo pending the appeal. Ex parte Spriggs Enterprises, Inc., 376 So.2d 1088 (Ala. 1979). When one appeals without posting a supersedeas bond, the appellee's right to enforce the judgment is not suspended during the appeal, and, whatever measures are necessary for the execution of the judgment, it is the duty of the trial court to pursue them on application of the party in interest. Ex parte Dekle, 278 Ala. 307, 178 So.2d 85 (1965)."
Baker v. Bennett, 660 So.2d 980, 982 (Ala. 1995) (emphasis added). The Wattses did not post a supersedeas bond when they appealed the trial court's original judgment. They cannot now complain about the trial court's enforcing its original judgment during the pendency of that appeal; nor are they allowed to profit from the enforcement of that judgment. We hold that Rudulph is entitled to recover the amounts of the lawful charges associated with the property, pursuant to § 6-5-253, Ala. Code 1975. On remand, the trial court is instructed to allow the Wattses a credit, in the amount of the rents collected by Rudulph, against its award for Rudulph's permanent improvements to the property.
The trial court established the redemption price, and the Wattses do not challenge that amount on appeal. Rather, the Wattses argue that the trial court should have given them credit for the $7,700 already disbursed to Rudulph, and instead ordered them to tender the remaining balance of $16,867.94 to Rudulph.
In its first order, which was later reversed on appeal, the trial court ordered the $7,700 disbursed to Rudulph as rent on the property for the time during which the Wattses remained in possession of the property. The Wattses made a valid attempt to redeem the property on August 20, 1993. We note that until the Wattses vacated the property in October 1994, the property did have rental value. In light of our supreme court's holding in Watts v. Rudulph Real Estate, Inc., supra, that Rudulph did not act in good faith in refusing to allow the Wattses to redeem, we hold that Rudulph is not entitled to retain the rents from the Wattses for their continued possession of the property until October 1994. Therefore, on remand, the trial court should allow the Wattses a credit for the amount previously disbursed to Rudulph.
As their final argument on appeal, the Wattses "respectfully suggest" that the trial court erred in ordering that the costs of the action were taxed as paid. The Wattses cite no authority in support of this argument. This court will not consider an issue not properly supported by citations to appropriate authority. Rule 28, Ala.R.App.P.; Thomason v. Redd, 565 So.2d 259
(Ala.Civ.App. 1990). However, we note that Rule 54, Ala.R.Civ.P., provides that the taxing of costs is within the discretion of the trial court. Bukley v. Carroll, 366 So.2d 1094 (Ala. 1978).
In his cross appeal, Rudulph also argues that the trial court erred in refusing to award it interest on the redemption price of the property and asserts that it is entitled to interest totaling approximately $13,500, pursuant to § 6-5-253, Ala. Code 1975. We hold that Rudulph is entitled to interest until the date of the Wattses' valid attempt at redemption that Rudulph refused. The interest to which Rudulph is entitled is included in the redemption price of $24,551.88. Any other result would allow a purchaser to profit from his refusal of a valid tender for redemption. Rudulph is not entitled to interest on the redemption amount for the time in which this dispute has been pending. *Page 1089 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., and YATES, J., concur in the result.